UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
DUKE FERGERSON,                                              :
:
    Plaintiff,                                          :
:
    v.                                                   :    **Before: Judith M. Barzilay, Judge**[*]
:    **No. 08-CV-4701**
THE DEPARTMENT OF EDUCATION OF THE                           :
CITY OF NEW YORK and KAREN WATTS,                            :
individually and in her official capacity as Principal       :
of Wadleigh Secondary School,                                :
:
    Defendants.                                          :
:
------------------------------------------------------------x

## OPINION & ORDER

**BARZILAY, Judge:** This case exemplifies what happens when adults act like children and children then suffer the consequences. Plaintiff Duke Fergerson ("Plaintiff" or "Fergerson"), a football coach employed by Defendant Department of Education of the City of New York ("the Department" or "the Board of Education"), was affiliated with the Wadleigh Secondary School for the Performing and Visual Arts ("Wadleigh School") and supervised by its Principal Karen Watts ("Watts") during the relevant time period.[1] He alleges that his employer violated his right

---

[*] The Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.

[1] As an initial point, Defendant notes that Plaintiff has not properly served Watts, either personally or by mail, with a summons and a copy of the complaint. *Compare* Fed. R. Civ. P. 4(c)(1), *with* Def. 56.1 Statement 1 n.1, Exs. A, B at 1 n.1. Because Plaintiff does not rebut this assertion, *see generally* Pl. Br., and Defendant makes clear that Watts has not participated in this action, *see, e.g.*, Def. 56.1 Statement 1 n.1, the court accepts as admitted the improper service on Watts and, accordingly, dismisses Fergerson's claim against her. Fed. R. Civ. P. 4(m); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to

No. 08-CV-4701                                                                                    Page 2

to free speech under the First Amendment and seeks redress under 42 U.S.C. § 1983. The Department moves the court for summary judgment and argues that Fergerson's claim fails as a matter of law. *See generally* Def. Br. Because Plaintiff cannot demonstrate municipal liability, the court grants Defendant's motion.

## I. Relevant Facts[2]

Encouraged by Plaintiff and others, the Board of Education established the Harlem Hellfigthers football program in 2003, hoping to provide "college scholarship opportunities" for at-risk male student athletes attending various public high schools in Harlem. Pl. Decl. 1-2. The Department required at least one area public high school to host the team each academic year, with the Wadleigh School serving as sponsor at the time these events took place. Pl. Decl. 2. From its inception, Fergerson has coached the team. *See generally* Pl. Decl.

The events giving rise to this action center on Fergerson's role as coach of the Hellfighters during the 2007 football season. In September of that year, prior to the football season, Watts informed Fergerson that her school would form a separate team comprised solely of Wadleigh School students and that the Hellfighters would need to find an alternative sponsor.[3] Pl. Decl. 2-3. One month later, the Hellfighters played an away game against the McKee Staten

---

controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (citation omitted)).

[2] Unless otherwise noted, the parties do not dispute the following facts.

[3] The parties disagree whether Fergerson's employment ended once the Hellfighters completed their season in November 2007 or extended through September 2008. *Compare* Pl. Decl. 2-3, *with* Def. 56.1 Statement 3. However, for the reasons below, this factual dispute does not present a genuine issue of material fact.

No. 08-CV-4701 Page 3

Island Technical School. Pl. Decl. 3. Once at the field, Fergerson encountered a "racially charged atmosphere" and a racial epithet painted on a sideline bench. Pl. Br. 3. Observing what he felt amounted to an inadequate response by the staff of the McKee Staten Island Technical School and the officiating crew, Fergerson contacted local police and several area media outlets. Pl. Decl. 4-5. He provided the New York City Police Department with information to complete incident and complaint reports, and interviewed with several news sources. Pl. Decl. 5. The media outlets reporting on the incident identified him as coach of the Harlem Hellfighters in each publication. Pl. Decl. Ex. C; Def. 56.1 Statement Ex. G. When Fergerson returned to the Wadleigh School the following week, he claims that he faced resentment from Watts and the administrative staff because of the unwelcome attention to the school brought on by his interactions with the press. Pl. Decl. 5.

In late-November 2007, Fergerson met with Deputy Chancellor Kathleen Grimm ("Grimm"), Terrence Tolbert ("Tolbert"), Special Assistant to Mayor Bloomberg, and others to discuss the status of the Hellfighters program and the incidents arising from the team's game in Staten Island. Pl. Decl. 5-6. Fergerson claims that during the meeting, Grimm spoke dismissively about the future of the Hellfighters. Pl. Decl. 6. It remains unclear whether Grimm or another individual used a similar tone when they discussed the Staten Island incident. Pl. Decl. 6.

A few weeks later in early-December 2007, Fergerson received an allegedly unexpected notice of immediate termination from Watts, who also barred Fergerson from the Wadleigh

School campus after an internal investigation revealed that he verbally abused a student-athlete over an unreturned uniform. Pl. Decl. 7 n.1; Def. 56.1 Statement 5. In the subsequent months, Fergerson unsuccessfully attempted to find another sponsor school for the Hellfighters for the 2008 football season and, consequently, many student-athletes missed out on the program's benefits.[4] Pl. Decl. 8. This action followed.

## II. Subject Matter Jurisdiction & Standard of Review

The Court has removal jurisdiction over this suit. 28 U.S.C. §§ 1331, 1441(b), 1443(1); *see also Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389-90 (1998) (recognizing that federal courts have original and removal jurisdiction over claims brought under § 1983). Under the Federal Rules of Civil Procedure, a court may grant summary judgment only when no genuine dispute over a material fact exists and the law entitles the movant to judgment in its favor. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "No genuine issue exists if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citation omitted). If the movant satisfies the summary judgment standard, the non-movant must point to specific facts and offer more than a "scintilla of evidence" or unsubstantiated speculation to establish a

---

[4] The Board of Education reorganized the program in 2009, with Fergerson serving as coach once again. Douglas Decl. 2.

No. 08-CV-4701                                                                                              Page 5

genuine factual dispute that warrants trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

### III. Discussion

#### A. The Framework for a First Amendment Retaliation Claim Under Section 1983

The Supreme Court has stated that a plaintiff must affirmatively demonstrate the following to prevail in an action under § 1983 alleging employment retaliation for the exercise of his First Amendment rights: (1) he engaged in protected speech; (2) he suffered an adverse employment action; and (3) the subject speech served as a "substantial or motivating factor" in the adverse employment decision. *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996); *Gronowski v. Spencer*, 424 F.3d 285, 292 (2d Cir. 2005) (citations omitted). Moreover, because a municipality remains as the sole defendant in this case, plaintiff must prove that the city authority or agent acted "pursuant to official municipal policy." *Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In the context of a school district, municipal liability attaches only if a plaintiff can offer proof that a district employee acted (1) "pursuant to an expressly adopted official policy;" (2) "pursuant to a longstanding practice or custom;" or (3) as a "final policymaker" under state law. *Hurdle v. Bd. of Educ.*, 113 F. App'x 423, 424-25 (2d Cir. 2004) (unpublished) (quotation marks & citations omitted); *see Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). As to the last prong, a final policymaker "need not be a municipal policymaker for all purposes." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000). Rather, the court must ask "whether the government official is a final policymaker for the local government

**No. 08-CV-4701** Page 6

in a particular area, or on the particular issue involved in the action." *Id.* (brackets & quotation marks omitted) (quoting *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 (1997)).

## B. Fergerson Cannot Establish Municipal Liability

Fergerson fails to clearly identify or demonstrate an unconstitutional policy that would support a claim of municipal liability. He does not offer any evidence of a purported policy, practice, or custom which caused his claimed First Amendment violation, *see generally* Pl. Br., and the court cannot discern the contours of any purported practice or custom, as the facts of this case could allow for numerous theoretical policies. For example, Fergerson might show that the Board of Education customarily terminates employees for speaking to the press or, alternatively, for publicly condemning another school's response to an incident involving hostile racial overtones. As a result of this defect, Plaintiff cannot establish liability under the first two prongs of the *Monnell* test. 436 U.S. at 691.

Notwithstanding the absence of a clear unconstitutional policy, Fergerson alleges that Watts, Grimm, and Tolbert acted as final policymakers sufficient to establish liability, or at least did so with the implicit authority of the Department's Chancellor and Mayor Bloomberg. Pl. Br.15-16. However, even if the court assumes that Fergerson properly served Watts, neither she nor any other individual germane to Plaintiff's allegations fit within the description of "final policymakers" under New York law. N.Y. Educ. Law §§ 2590-g (describing powers and duties of Board of Education, including advising and approving chancellor's proposals "on matters of policy affecting the welfare of the city school district and its pupils"), 2590-h (describing Chancellor's ability to, *inter alia*, "control and operate" schools within school district and submit

No. 08-CV-4701                                                                                          Page 7

policy proposals to Board of Education); *see Hurdle*, 113 F. App'x at 427 (citation omitted) (noting that where, as in this case, Board of Education and Chancellor retained authority to override lower-ranking school district employee on particular matter of policy, latter did not have final policymaking authority). Finally, Fergerson only speculates that the Chancellor and Mayor Bloomberg approved the Wadleigh School's decision not to sponsor the Hellfighters after the 2007 football season and, thus, offers no evidence to raise his claim above mere conjecture. *See Anderson*, 477 U.S. at 252. Accordingly, Fergerson's claim under *Monnell* fails as a matter of law.

### IV. Conclusion

The often immature actions of all connected with the incidents leading up to the filing of this law suit undoubtedly prevented some deserving young people from benefitting from a worthwhile program, at least temporarily. The court, however, does not retain the power to cure these ills, and Fergerson's claim fails as a matter of law. Therefore, upon consideration of Defendant's Motion for Summary Judgment, Plaintiff's Memorandum of Law in Opposition, the applicable legal standards, and the relevant facts, for the foregoing reasons it is hereby

**ORDERED** that Defendant's motion is **GRANTED**.

Dated: January 31, 2011
New York, New York                                               Judith M. Barzilay, Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
DUKE FERGERSON, :
:
    Plaintiff, :
:
    v. : Before: Judith M. Barzilay, Judge[*]
: No. 08-CV-4701
THE DEPARTMENT OF EDUCATION OF THE :
CITY OF NEW YORK, and KAREN WATTS, :
individually and in her official capacity as Principal :
of Wadleigh Secondary School, :
:
    Defendants. :
:
------------------------------------------------------------x

## JUDGMENT

In light of the court's opinion in this case on January 31, 2011, and all other papers filed in this matter, it is hereby

**ORDERED** that Plaintiff's claim against Karen Watts is **DISMISSED** without prejudice; and it is further

**ORDERED** that Fergerson's case against the Department is **DISMISSED** without prejudice.

Dated: January 31, 2011
       New York, New York

    /s/ Judith M. Barzilay
    (Judith M. Barzilay, Judge)

---

[*] The Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.